IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.  Criminal No. 2:22-cr-00218

BILLY J. GRIFFITH

### DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

Billy J. Griffith , by counsel, David Schles, submits this sentencing memorandum and motion for downward variance for the Court's consideration. This court presided over the trial and is familiar with the evidence presented and the finding of the jury. Neither the government nor Mr. Griffith have objections which would affect the guidelines calculations in the presentence investigation report (hereinafter "PSR") so this memorandum will focus on the 18 U.S.C. § 3553 (a) factors and the grounds for a downward variance sentence. The parties agree that the Total Offense Level is 37 and Mr. Griffith has zero criminal history points and a criminal history category of I; the guideline imprisonment range is 210-262 months. The defendant will also address his objections to certain recommended conditions of supervised release and restitution.

### The 18 U.S.C. § 3553 (a) Factors and Grounds for a Downward Variance

Mr. Griffith's advisory guideline range is 210-262 months. A 210 month term of imprisonment would be significantly greater than necessary to achieve the statutory sentencing purposes of 18 U.S.C § 3553(a). Mr. Griffith therefore moves this court to impose a downward

variance sentence of 60 months. He relies upon the following § 3553(a) factors in support of the requested sentence.

### 18 U.S.C. § 3553 (a)(1): The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

First, the contraband files found on the devices belonging to Mr. Griffith show that he does not have the characteristics which are common to most who possess or view child pornography. The files were not organized or categorized in any fashion as is frequently seen and he demonstrates no attributes consistent with "collectors" of child pornography. The jury has found Mr. Griffith guilty of receiving and possessing child pornography but across the wide spectrum of child sexual exploitation offenses, this case presents a lesser degree of culpability than the majority of offenses, including those other offenses related solely related to child pornography and involving no direct contact with minors.

Mr. Griffith has also demonstrated throughout his life that he is a devoted family man who worked hard to support his wife and two children. Mr. Griffith was also active in his local community, serving as a volunteer reserve officer for the city of St. Albans and as a deacon at his church. Mr. Griffith has no history of drug or alcohol abuse and his age and background present a low risk of recidivism or inability to comply with any terms of supervision.

### 18 U.S.C. 3553 (a)(2) Factors

As stated above, a sentence of 210 months is much greater than necessary to adequately achieve the purposes of sentencing. This court should give limited weight to the advisory sentencing

range in this matter. As the Court is aware, the Sentencing Commission did not use an empirical approach to develop the non-production guideline in U.S.S.G. § 2G2.2. Instead, the Commission increased the base offense level and added enhancements "usually as a result of congressional directives." Sentencing Commission, REPORT TO THE CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES 249 (2012) (hereinafter "2012 report"). In promulgating the child pornography guidelines, the Sentencing Commission deviated from its "characteristic institutional" role in formulating § 2G2.2. Therefore, this court should not accept the recommended guideline range in the PSR (which defendant acknowledges properly follows the guideline structure).

As a threshold matter, the sentencing guidelines are purely advisory and remain just one factor among many that the Court must consider in fashioning an appropriate sentence. *United States v. Booker*, 543 U.S. 220, 245 (2005). A guideline calculation based upon a sound methodology provides a "starting point and initial benchmark" for sentencing, but even then, the Court "may not presume that the Guidelines range is reasonable" and instead must "make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

The weight courts usually give to the guideline calculation as an appropriate "starting point" is owed in part to the empirical approach typically employed by the Sentencing Commission, which "fills an important institutional role"—the promulgation of guidelines based "on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) (internal quotation marks omitted). By this same reasoning, the guideline for a particular offense is entitled to very little weight when it "do[es] not exemplify the Commission's exercise of its characteristic institutional

3

role," that is, when the guideline was drafted without the normal reference to empirical data. *Id*. In such cases, the Court may well conclude that a guideline sentence "yields a sentence greater than necessary to achieve § 3553(a)'s purpose, even in a mine-run case." *Id*.

The Sentencing Commission has amended § 2G2.2 multiple times over the years, not based on evolving empirical evidence but simply to increase the applicable guideline ranges in pace with the escalating statutory penalties for child pornography offenses. *See*, 2012 Report at 291. Because this guideline did not result from an analysis of empirical data or derive from independent expertise, the Court may vary from the resulting guideline range in recognition that it does not reflect the sound judgment of the Commission. See, *Gall*, 552 U.S. at 46 n.2 ("[T]he Sentencing Commission departs from the empirical approach" when it "cho[oses] to key the Guidelines to the statutory mandatory minimum sentences" established by Congress.).

The Commission itself has issued multiple reports detailing the myriad problems with § 2G2.2. In 2021, the Commission issued a report criticizing the current guideline scheme and concluding that "the nonproduction child pornography sentencing scheme should be revised to account for technological changes in offense conduct, emerging social science research about offender behavior, and variations in offender culpability and sexual dangerousness." 2021 Report at 2.

Here, Mr. Griffith received a number of enhancements for conduct "that has become so ubiquitous that they now apply in the vast majority of cases sentenced under ... § 2G2.2." 2021 Report at 4. In fiscal year 2019:

> Over 95% of child pornography offenders received enhancements for use of a computer;
> Over 95% received the enhancement for images involving minors less than 12 years old;

>84% of offenders received enhancements for sadistic or masochistic conduct;
>
>77.2% of offenders were enhanced for having 600 or more images.

These enhancements, which were "originally . . . intended to provide additional proportional punishment for aggravating conduct," now apply to the "vast majority" of non-production offenders as a matter of routine. 2012 Report at 316; see also *United States v. Cruikshank*, 667 F. Supp. 2d 697, 702 (S.D.W. Va. 2009) ("Because they are not based on empirical data and past practices, the Guidelines for consumers of computer-based child pornography are skewed upward. Instead of imposing enhancements for more severe offenses, the § 2G2.2 enhancements apply in nearly every case").

Here, Mr. Griffith receives enhancements from his base offense level of 22 for images:

>Involving a minor who has not reached 12 years old (+2);
>
>Involving sadistic or masochistic conduct (+4);
>
>Use of a computer (+2);
>
>600 or more images (+5).

Thus, rather than facing a sentencing range of 51-63 months as would apply without these enhancements (the range corresponding to offense level 24 and zero criminal history points), the 13 level increase for these specific offense characteristics based on conduct demonstrably involved in the vast majority of cases– catapults his total offense level from 24 to 37 and his advisory sentencing range from 51-63 months to a draconian 210-262 months.

Given both the capability of and availability of modern technology, the enhancements for use of a computer and for the number of images disproportionately and irrationally increase the sentences that result from strict adherence to the structure of § 2G2.2. Virtually all present day

offenses involve use of a computer, and high-speed internet service and compression utilities allow for a large number of images to be transmitted in a short period of time and without any long, complicated or involved action by the recipient. See, *United States v. R.V.*, 157 F. Supp. 3d 207, 228-231 (E.D.N.Y. 2016). Numerous other district courts have found that the enhancement based upon the total number of images no longer provides for any reasonable distinction between large scale and small scale child pornography offenders as first envisioned by Congress and the Sentencing Commission. See, e.g.: *Cruikshank*, 667 F. Supp. 2d at 702; *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1107 (N.D. Iowa 2009); *United States v. Hanson*, 561 F.Supp. 2d 1004, 1009 (E.D. Wis. 2008).

Conversely, drug quantity is often a reliable indicator of an offender's proportional culpability because large scale drug dealers necessarily must take many deliberate and separate actions both to obtain larger quantities of controlled substances and to develop organizations of the size and scope necessary to distribute such large quantities. This common factor in drug cases does not however apply with respect to child pornography. Due to the easy and inexpensive way to download files to a computer, the total number of images is not a reliable indicator of the culpability of a child pornography offender. *Beiermann*, 599 F. Supp. 2d at 1106. In *Cruikshank*, this Court held that U.S.S.G. § 2G2.2 was not entitled to the usual deference afforded to guidelines promulgated by the Sentencing Commission, in part because the quantity based enhancements were "untethered to moral culpability."

In addition to a growing number of courts, the very body that drafted § 2G2.2 has

published findings detailing some of its many flaws and recommending amendment and reform.[1] The Sentencing Commission has recommended § 2G2.2 be drastically revised to establish three categories for enhancements in non-production cases that are supported by research and empirical evidence relating to actual culpability, harms caused, the need for deterrence and the likelihood of recidivism:

> 1. The content of an offender's child pornography collection and nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including the use of sophisticated technology);
>
> 2. The degree of an offender's engagement with other offenders – in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and
>
> 3. Whether the offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

2012 Report, Ch. 12 at 320.

The presence of aggravating factors from any of these three categories would warrant an enhanced punishment depending upon the degree that they are present in a particular case. *Id.* at 321. The proposed revisions would reflect changes in offense conduct and knowledge gained from emerging social science research and would better account for variations in an offender's capabilities and the potential for sexual dangerousness in the future. Id. at 322. Congress has yet to take any action in considering the Commission's recommendations for a

---

[1] United States Sentencing Commission, Federal Child Pornography Offenses (Dec. 2012); this 300+ page report and attached exhibits can be found at https://www.ussc.gov/research/congressional-reports/2012-report-congress-federalchild-pornography-offenses (last visited February 19, 2024).

new guideline for non-production child pornography offenders but this Court should evaluate the appropriate sentence for Mr. Griffith with these factors in mind rather than by strictly applying the current enhancement provisions. The number of images found on Mr. Griffith's computer is typical or fewer, rather than abnormally high in the present day and should not be considered an aggravating factor. Likewise the nature of the images found are typical for those engaged in nonproduction offenses and should not be considered an aggravating factor. Neither the ages of the minors portrayed nor the types of sexually explicit conduct involved vary from those now found in the "run of the mine" or typical cases. The forensic review of the computer shows that the images were not organized or categorized to any degree nor maintained or protected by use of sophisticated technology.

  The evidence showed no engagement with other offenders. No evidence suggests that Mr. Griffith ever communicated with another person involved with child pornography let alone interacted with a "community" devoted to child pornography and child sexual exploitation. At most, the evidence showed Mr. Griffith used a peer-to-peer file sharing program, an action requiring no human interaction. Furthermore, it is undisputed that there is no reason to suspect, let alone a shred of evidence to support any suspicion, that Mr. Griffith ever engaged in sexually abusive, exploitative, or predatory conduct in addition to the child pornography offenses for which he has been convicted. Looking at the factors which the Sentencing Commission's own research has identified as being empirically correlated with culpability in these cases, Mr. Griffith ranks among the lesser culpable defendants and least likely to reoffend.

  As these flaws in the structure of and the inequities which flow from application of

this guideline become more apparent over time, more and more courts have recognized the need to give greater weight to factors outside the guideline structure. Indeed, only 30% of individuals sentenced under § 2G2.2 in fiscal year 2019 were sentenced within the guideline range. 2021 Report at 5, 76. "Judges have continued to sentence most non-production child pornography offenders below the guideline range, most often by imposing variances pursuant to their authority under 18 U.S.C. § 3553(a), but also increasingly at the request of the government." 2021 Report at 69. Therefore, it is not the majority of courts which vary downward who create sentencing disparities in these cases, but the shrinking minority of courts that do not.

Moreover, in its recent study, the Sentencing Commission concluded that the overall recidivism rate for non-production defendants is low (27.6%) and the rate of sexual recidivism is very low (4.3%). 2021 Report at 65. These results are consistent with recidivism data analyzed by the Sentencing Commission indicating that "first offenders" such as Mr. Griffith generally pose the lowest risk of recidivism. See: U.S. Sent'g Comm'n, Recidivism Among Federal Offenders: A Comprehensive Overview 18 (2016).

In addition to the statistical improbability of Mr. Griffith offending in the future, he will be subject to stringent post-release conditions and federal and state sex offender requirements that serve to protect the public and deter future criminal conduct. See: Lawrence v. Texas, 539 U.S. 558, 575 (2003) (recognizing that the "stigma" imposed for violation of sex crime statute "is not trivial"); United States v. Mateo, 299 F. Supp. 2d 201, 209-10 (S.D.N.Y. 2004) ("[B]eyond the offender's actual deprivation of liberty when incarcerated, a host of other

9

penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement.").

Considered together, Mr, Griffith's background and personal characteristics, the fundamental flaws in the sentencing guideline structure for these offenses, and the strict conditions and lengthy term of supervised release to which Mr. Griffith is subject render a tem of imprisonment of 60 moths sufficient but not greater than necessary to fulfill the purposes of sentencing.

### Supervised Release Conditions

The PSR recommends that the Court impose numerous discretionary conditions of supervised release. Mr. Griffith objects to certain proposed conditions as set forth in the addendum to the PSR, and to the special condition directing him to pay the $5,000 special assessment set forth in 18 U.S.C. § 3014. Mr. Griffith objects to the imposition of the $5,000 special assessment. The statute states this assessment only applies to "non-indigent" defendants. 18 U.S.C. § 3014. Mr. Griffith is indigent. He has been incarcerated and without any income for approximately eight months and will obviously be imprisoned for a lengthy period of time to come. He qualified for appointed counsel under the Criminal Justice Act prior to his incarceration and his financial condition is obviously now considerably worse. The only valuable asset he possesses is a residence in which his interest is as joint tenant with his wife and which is valued at approximately $70,000. His future earning potential is

extremely limited given his age, lack of education, and the nature of this offense. The defendant has received no documentation in support of restitution from either the government or the probation office and maintains his objection to the imposition or of restitution.

## Motion for Downward Variance

The defendant, Billy J. Griffith  herein moves for a downward variance sentence based on the sentencing factors found at 18 U.S.C. § 3553 (a) as more fully elaborated upon above. A sentence of 60 months is appropriate and would fulfill the purposes of sentencing set forth in § 3553 (a)(2).

Respectfully submitted
BILLY J. GRIFFITH

By counsel,

**s/ David Schles**
David Schles (WV Bar #6375)
815 Quarrier Street
Suite 306
Charleston, WV 25301
(304) 344-1559
Schleslaw@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.                                                                                  Criminal No. 2:22-cr-00218

BILLY J. GRIFFITH

### CERTIFICATE OF SERVICE

I, David Schles, counsel for defendant, Billy J. Griffith do hereby certify that on this 20th day of February, 2024, the foregoing DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE was served upon the following by CM/EMF electronic filing:

William S. Thompson, United States Attorney
J. Parker Bazzle , II, Assistant United States Attorney
Andrew J. Tessman, Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
Suite 4000
300 Virginia Street East
Charleston, WV 25301

                                                          s/ David Schles
                                                          David Schles, WV Bar #6375
                                                          815 Quarrier Street
                                                          Suite 306
                                                          Charleston, WV 25301
                                                          (304) 344-1559
                                                          Schleslaw@gmail.com